DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/14/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
EDWARD TAVAREZ,                    :
                                  :
            Petitioner,           :
                                  :
      - against -                 :
                                  :      MEMORANDUM AND ORDER
                                  :
STATE OF NEW YORK (Bare Hill      :      07 Civ 8673 (NRB)
Correctional Facility,)           :
                                  :
            Respondent.           :
-------------------------------X

Edward Tavarez ("petitioner") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 30, 2003, petitioner was found guilty in the Supreme Court of New York in New York County of Assault in the Second Degree (N.Y. Penal Law § 120.05(2)), Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2) (amended 2005)), and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4) (repealed 2006)). Petitioner was sentenced to eight years in state prison.

Petitioner seeks a writ of habeas corpus on three grounds: (1) that the trial court erroneously held that an allegedly involuntary statement he made following his arrest was admissible evidence for purposes of impeachment; (2) that he received ineffective assistance of counsel at trial; and (3) that his sentence was unduly harsh and excessive. See Edward Tavarez's Petition Under 28 U.S.C. § 2254 for Writ of Habeas

1

Corpus by a Person in State Custody, dated August 31, 2007 ("Pet."). For the reasons set forth below, the petition is denied.

**BACKGROUND**[1]

## I.   Events in Question

The events in this case arose out of a dispute between petitioner and Gregorio Santana. The two men had agreed in December 2002 to sell fake drugs to unwitting buyers, and when they received some proceeds from their scheme, Santana claimed he had not been adequately compensated. (Tr. 72-74, 76-77.)

On January 30, 2003, petitioner was driving a minivan along 161st Street near Amsterdam Avenue, when he pulled alongside a vehicle driven by Santana. (Id. 83-86.) Petitioner's friend, Roy Abreu, was in petitioner's car (id. 248-51) and Kelvin Hernandez and Susy Ortez were in Santana's car (id. 193-94, 209-11). As the vehicles drew alongside one another, petitioner lowered his window, asked Santana whether he wanted to "take care of this," pulled out a gun, and fired two shots through Santana's window (id. 86-87), hitting Santana in the right arm (id. 99). Santana then drove himself to Columbia Presbyterian Medical Center. (Id. 119-20, 218.)

---

[1] The following facts are drawn primarily from the trial transcripts ("Tr."). We construe the facts in favor of the prosecution, as is appropriate following conviction. See, e.g., Farrington v. Senkowski, 19 F. Supp. 2d 176, 181 (S.D.N.Y. 1998), aff'd, 214 F.3d 237 (2d Cir. 2000).

Detective Carmen Chiclana of the 33rd Precinct Detective Squad was informed of the shooting and was called to the hospital at approximately 11:00 a.m. (Id. 48.) She questioned Santana, and then inspected both the scene of the crime and Santana's vehicle with other officers. (Id. 48-51.) Detective Chiclana subsequently returned to the hospital at 2:40 p.m. and interviewed Santana again (id. 60-61), and, at around 4:00 p.m., she interviewed Kelvin Hernandez and Suzy Ortez at the 33rd Precinct (id. 52-53). Later that evening, as a result of her investigation, Detective Chiclana decided to visit petitioner at his home. Petitioner agreed to accompany her to the 33rd Precinct, where he was placed under arrest. (Id. 51-52, 60-61, 304.)

When he was arrested, Detective Chiclana informed petitioner of his Miranda rights (id. 304-05), and he indicated in writing that he was unwilling to answer any questions relating to his arrest (id. 306-07). Detective Chiclana then asked petitioner a number of pedigree questions, and filled out paperwork until approximately 11:00 p.m. (Id. 331-32.) Petitioner's mother had arrived at the precinct by this point, and Detective Chiclana spent some time interviewing her outside of petitioner's presence. (Id. 312-13, 334-35.) Petitioner's mother informed Detective Chiclana that the family owned a car and Detective Chiclana asked petitioner where the vehicle was

parked.  (Id. 337.)  He said he had left it at 158th Street (id. 337-38), and Detective Chiclana then left the station with petitioner's mother for approximately half an hour, in order to locate the vehicle.  (Id. 340-41.)  They were unable to find the car, however, and Detective Chiclana returned to the precinct and asked petitioner if he would be willing to show her where the car was parked.  (Id. 310-11.)  Petitioner agreed and accompanied Detective Chiclana to the garage where he said the vehicle was parked, but they were again unable to find petitioner's car.  (Id. 337-38.)

Having failed to locate the car, Detective Chiclana returned with petitioner to the precinct.  She took off her gun and placed petitioner, who was not handcuffed at the time, in an interview room.  (Id. 319-20.)  Detective Chiclana informed him that, if they were unable to locate his vehicle, the police would put an alarm out on the car and any of petitioner's "family [or] friends" found driving the car would be subject to arrest.  (Id. 351-52.)  Immediately afterwards, petitioner told Detective Chiclana that he had not seen Santana on either January 29 or 30.  (Id. 316-17.)  He claimed that his only contact with Santana had involved the sale of an automobile in late 2001 or early 2002.  (Id.)  Chiclana transcribed petitioner's statement and requested that he sign it, but he refused to do so.  (Id.)  These statements were made around 2:40

a.m. on January 31, approximately four and a half hours after petitioner's arrest.  (Id. 253.)

## II.  **Procedural History**

Petitioner was charged with Attempted Murder in the Second Degree, two counts of Assault in the First Degree, Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Reckless Endangerment in the First Degree.  New York County Indictment No. 633/03.  Both charges of first-degree assault were reduced on petitioner's motion; one to second-degree assault and the other to third-degree assault, a charge that was ultimately dismissed.  (Tr. 414.)

Petitioner moved to suppress his post-arrest statement that he had not seen Santana on either January 29 or 30, but the prosecution subsequently asserted that it would not offer the statement in its case-in-chief.  Instead, during the course of the trial, the prosecution sought a hearing to determine the voluntariness of petitioner's post-arrest statement so that it could be used to impeach his credibility should he choose to take the stand.  (Id. 294.)  Following this hearing, the court authorized the admission of the statement for impeachment purposes only.  (Id. 378-80.)  Petitioner ultimately did not testify.

On June 16, 2003, petitioner was convicted by a jury of Assault in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree.    (Id. 554-55.)    The jury acquitted petitioner of the attempted murder charge, and did not consider the reckless endangerment charge, in accordance with the court's instructions.    (Id. 531, 555.)    On September 30, 2003, petitioner was sentenced to seven years imprisonment on the second-degree assault count, eight years on the second-degree possession of a weapon count, and seven years on the third-degree possession of a weapon count, all of which were to be served concurrently.

Petitioner appealed his conviction, claiming that the trial court improperly authorized the admission of his post-arrest statement for impeachment purposes, and that the sentence imposed by the court was excessive.    See Brief for Defendant-Appellant 25-26, 40-41, People v. Tavarez, 790 N.Y.S.2d 387 (App. Div. 2005)(No. 633-2003).    The Appellate Division, First Department, affirmed petitioner's conviction on March 8, 2004, holding that his statement was voluntary and that there was no basis for reducing his sentence.    People v. Tavarez, 790 N.Y.S.2d at 387.    On March 17, 2005, petitioner sought leave to appeal to the New York Court of Appeals on the same issues, and

leave to appeal was denied on June 21, 2005.  People v. Tavarez, 5 N.Y.3d 770 (2005).

In March 2006, petitioner moved to vacate his conviction under New York Criminal Procedure Law § 440.10, claiming that his trial counsel provided ineffective assistance by not informing petitioner of his right to testify in his own defense at trial, and for not objecting to the court's jury instruction that no adverse inference could be drawn from petitioner's failure to testify.  See Edward Tavarez's Notice of Motion to Vacate Judgment at 1-2, People v. Tavarez, No. 633-2003, 2007 N.Y. App. Div. LEXIS 7871 (1st Dep't June 26, 2007).  On June 5, 2006, the New York State Supreme Court, New York County denied the motion on the grounds that the record contained sufficient facts for petitioner's claims to have been raised on direct appeal.  Therefore, the motion was procedurally barred under N.Y. Crim. Proc. § 440.10(2)(c) (2008).  People v. Tavarez, 2007 N.Y. App. Div. LEXIS 7871.  The court also ruled that petitioner's claim was meritless, finding that petitioner voluntarily chose not to testify on his behalf and that he did not receive ineffective assistance of counsel.  Id.  Petitioner sought leave to appeal the decision on June 28, 2006, and the Appellate Division denied leave to appeal on June 26, 2007.  Id. The Court of Appeals subsequently dismissed petitioner's appeal from that decision.  People v. Tavarez, 9 N.Y.3d 882 (2007).

The instant petition for a writ of habeas corpus was filed on August 24, 2007. Petitioner makes three claims: (1) that the court improperly authorized the admission of his post-arrest statement for impeachment purposes because the statement was not voluntary; (2) that he received ineffective assistance from his trial counsel; and (3) that the sentence imposed by the trial court was unduly harsh and excessive.

## DISCUSSION

### I.   Requirements for Habeas Relief in Federal Courts

#### A.   Exhaustion Requirements for Habeas Relief

Before a federal court may issue a writ of habeas corpus to an individual detained following a conviction in a state court, the petitioner must have exhausted all possible state remedies by presenting his claims in federal constitutional terms to the "highest state court from which a decision can be had." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 n.3 (2d Cir. 1982); see 28 U.S.C. § 2254(b)(1)(A). Although a petitioner need not explicitly refer to federal constitutional rights in an appeal to state courts, he must clearly alert the court to the federal constitutional or statutory issues raised by the case prior to seeking a writ of habeas corpus from a federal court. Daye, 696 F.2d at 192-93.

All claims must also be brought in accordance with state procedural rules, such that the state courts have had a fair

opportunity to adjudicate the claims prior to federal intervention. See Wainwright v. Sykes, 433 U.S. 72, 81-82, 84 (1977). Claims not properly raised in state court may be procedurally barred from habeas relief in federal court. There are only two means by which a petitioner can overcome such a procedural default in order to obtain habeas relief in federal court. First, he can avoid default if he is able to show both a good cause for his failure to meet state procedural requirements, and that his failure to meet those requirements actually prejudiced the outcome of the case. Id. at 84-85. That is, he must show that, had he conformed fully with state procedures, there is a reasonable probability that the outcome of the case would have been different. See, e.g., United States v. Frady, 456 U.S. 152, 170 (1982). Second, he may be able to obtain habeas relief if he can demonstrate that denial of such relief would result in a fundamental miscarriage of justice due to his actual innocence. See Dretke v. Haley, 541 U.S. 386, 394 (2004).

Notwithstanding these procedural restrictions on granting habeas relief on the merits under § 2254(b)(1), federal courts retain the discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be "patently

frivolous."[2]   Ojeda v. Artuz, No. 96 Civ. 5900 (SAS), 1997 WL 283398, at *3 n.5 (S.D.N.Y. May 29, 1997); 28 U.S.C. § 2254(b)(2).

## B.   Standard of Review for Habeas Relief

When a federal court considers a petition for habeas corpus on the merits, that court must grant considerable deference to the prior determinations of state courts on both issues of law and issues of fact.   See, e.g., Uttecht v. Brown, __ U.S. __, 127 S.Ct. 2218, 2224 (2007).   Where a state court has adjudicated a claim on the merits, federal courts may only grant a writ of habeas corpus if the state court decision either was contrary to clearly established federal law, constituted an "unreasonable application of" clearly established federal law, or was predicated upon "an unreasonable determination of the facts" by the state court.   28 U.S.C. §§ 2254(d)(1), (2).

---

[2] The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims.   See, e.g., Love v. Kuhlman, No. 99 Civ. 11063 (DLC), 2001 WL 1606759, at *5 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508 (FB), 2002 WL 1359386, at *14 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399 (GLS), 2008 WL 820184, at *15 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002).   A minority of courts in this Circuit have denied such petitions when they "[do] not raise even a colorable federal claim," see Hernandez v. Lord, No. 00 Civ. 2306 (AJP), 2000 WL 1010975, at *4 n.8 (S.D.N.Y. July 21, 2000)(internal quotation marks omitted), but it has been noted that the two tests are essentially the same.   See Toland, 2008 WL 820184, at *15.

## II.  Analysis

### A.  Petitioner's Post-Arrest Statement

Petitioner claims that his post-arrest statements were involuntary, and obtained by the police in violation of his Fifth Amendment right against self-incrimination.  He therefore argues that these statements should have been held inadmissible for all purposes at trial.  Petitioner raised this claim both in his appeal to the Appellate Division and also in his petition for leave to appeal to the New York Court of Appeals.  The claim is therefore exhausted and subject to habeas review.

Under Miranda v. Arizona, statements obtained from an individual during interrogation, after that individual has invoked his or her constitutional right to remain silent, are inadmissible as evidence at trial, on the ground that such evidence is presumptively coerced.  384 U.S. 436, 476-77 (1966); see also Oregon v. Elstad, 470 U.S. 298, 306-07 (1985).  Indeed, read in isolation, the majority opinion in Miranda appears dispositive of the issues involved in this case:

> The warnings required and the waiver necessary in accordance with our opinion today are . . . prerequisites to the admissibility of any statement made by a defendant . . .  [N]o distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' . . .  In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial . . . . and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the

> full warnings and effective waiver required for any
> other statement.

384 U.S. at 476-77 (emphasis added). However, such an expansive
prohibition was not necessary to the holding reached in Miranda,
and in subsequent decisions the Supreme Court moderated its
stance on the admissibility of statements obtained by the police
in violation of a suspect's Miranda rights. Statements obtained
by police officer after a suspect has invoked his right to
remain silent are still inadmissible as evidence-in-chief under
Miranda, but such statements may sometimes be admissible for
other purposes at trial. See Harris v. New York, 401 U.S. 222,
224-26 (1971). In particular, the Court has held that otherwise
voluntary statements to the police may be used to impeach the
credibility of a suspect if he chooses to testify in his own
defense at trial. Id.

Although the Harris Court did not identify the precise
standards that would differentiate a "voluntary" post-arrest
statement from an "involuntary" one, the Court's holding in
Elstad indicated that "the absence of any coercion or improper
tactics" by the police would render a statement admissible for
impeachment purposes. 470 U.S. at 308. Therefore, provided
that petitioner's statement was not obtained by improper or
coercive means, the trial court's ruling that petitioner's post-
arrest statement was admissible for impeachment purposes was

12

neither contrary to nor an unreasonable application of federal law.

Moreover, with respect to the factual question of whether petitioner's statement was coerced, we defer to the findings of the state court unless those findings are unreasonable. 28 U.S.C. § 2254(d)(2); See Shriro v. Landringam, ___ U.S. ___, 127 S.Ct. 1933, 1939-40 (2007). Petitioner bears the burden of demonstrating that the findings of the state court are incorrect "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under this deferential framework, we cannot find that the state courts' decisions were erroneous as a matter of law. The finding of the trial court that petitioner's statement was voluntary was entirely reasonable, and petitioner has failed to provide any evidence that would lead us to doubt those findings. Petitioner's allegedly "involuntary" statement was obtained by Detective Chiclana at 2:40 a.m., four hours after he was arrested. (Tr. 318-19.) Detective Chiclana had spent much of the intervening time pursuing other leads in the investigation. (Id. 307-19.) For example, she had interviewed petitioner's mother, and had left the police station in an attempt to locate his car. (Id. 309-10.) Although petitioner portrays the investigation as an aggressive, five-hour interrogation, there is no evidence in the record to support this interpretation of the events. At the time the statement was obtained, petitioner

was not handcuffed, Detective Chiclana was not wearing her weapon, and she did not offer him anything in exchange for his statement.  (Id. 320-21.)  Compare Diaz v. Senkowski, 76 F.3d 61, 65 (2d Cir. 1996)(holding that statements made to police officers by a defendant who was not handcuffed, beaten or threatened during interrogation were voluntary), with United States v. Jimenez, 789 F.2d 167, 172 (2d Cir. 1986)(holding that statements made by a handcuffed defendant who was threatened at gunpoint were clearly coerced).  While petitioner interprets Detective Chiclana's statement that she would report his car as stolen as a threat against members of his family who might be found driving the vehicle, (id. 351-52; Pet. 5), he provides no link between Detective Chiclana's statement about the car and his subsequent statement about not having seen Santana during the day of the shooting.  As such, petitioner has not shown by "clear and convincing evidence" that the trial court's finding that his statement was voluntary was incorrect.  Accordingly, he has failed to meet his burden of proof under 28 U.S.C. § 2254(e)(1) and we deny habeas relief on the claim that his statement regarding Santana was involuntarily given.

## B.   Petitioner's Claim of Ineffective Assistance of Counsel

Petitioner raised his claim of ineffective assistance of counsel in a motion to vacate his conviction, brought under New

14

York Criminal Procedure Law § 440.10 rather than on direct appeal. Petitioner made two specific allegations in support of this claim: (1) that counsel failed to inform him of his constitutional right to testify in his own defense, and (2) that counsel failed to request or object to a "No Adverse Inference" charge given to the jury by the presiding judge. Edward Tavarez's Notice of Motion to Vacate Judgment at 1-2, People v. Tavarez, 2007 N.Y. App. Div. LEXIS 7871 (No. 633-2003). The Government concedes that the claim included in this motion was exhausted in state courts, and is therefore subject to federal habeas review.

However, all three levels of New York state courts denied petitioner's claims of ineffective counsel on procedural grounds, holding that sufficient facts existed on the record to have allowed the defendant to raise the issue on direct appeal. See People v. Tavarez, 2007 N.Y. App. Div. LEXIS 7871; see also N.Y. Crim. Proc. § 440.10(2)(c) (under New York law, an unjustifiable failure to raise on direct appeal a claim that could be adjudicated based on the record bars subsequent claims under § 440.10). Where, as is the case here, a petitioner's claims are barred by state procedural rules unrelated to his federal constitutional claims, federal courts may refuse to consider such petitions on the merits for the sake of comity and federalism. See Coleman v. Thompson, 501 U.S. 722, 730-31, 745-

47 (1991); Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003).
Petitioner can only avoid this procedural bar if he can
demonstrate either: (1) that there was cause for his procedural
violation and that the violation prejudiced the outcome of the
case; or (2) that not considering the habeas petition on its
merits would result in a fundamental miscarriage of justice.
Wainwright, 433 U.S. at 84-85, 91.

With respect to cause, petitioner has not offered any
explanation for his failure to include his claim of ineffective
assistance of counsel in his direct appeal.[3]  He asserts that
insufficient facts existed on the record to adjudicate his
claims that he was not informed of his right to testify in his
own defense and that his counsel neither requested nor objected
to the "No Adverse Inference" charge given by the judge.  Edward
Tavarez's Affidavit in Support of Motion for Certificate for

---

[3] Petitioner had new counsel for his appeal.  The Second Circuit
has specifically held that where a defendant is represented by counsel
other than his trial counsel on his direct appeal, and where the
petitioner's claim could have been adjudicated based solely on the
trial record, petitioner has not shown good cause for failing to raise
a claim of ineffective assistance of counsel on direct appeal.  See
Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003).  Thus, the only
claim that might be available to petitioner would be a claim that he
received ineffective assistance from his appellate counsel.  Id. at
142 n.7.  Not only did petitioner fail to raise this issue in his
petition, but the Supreme Court has found that any claim of
ineffective assistance from appellate counsel is an "independent
constitutional claim" that itself must be presented to state courts
before it can be adjudicated at the federal level.  Edwards v.
Carpenter, 529 U.S. 446, 451 (2000).  There is no evidence that
petitioner raised any claims against his appellate counsel in state
court, and therefore any hypothetical inadequacy of his appellate
counsel cannot constitute "cause" for his procedural default.

Leave to Appeal at 6, People v. Tavarez, 2007 N.Y. App. Div.
LEXIS 7871 (No. 633-2003). However, that assertion is belied by
the trial transcripts themselves, which demonstrate repeatedly
that petitioner was aware of his right to testify (Tr. 299,
384), and which also explicitly reveal that petitioner's counsel
did in fact request a "No Adverse Inference" charge from the
trial court (id. 20). There was clearly enough evidence on the
record for petitioner to raise his claim of ineffective
assistance of counsel on direct appeal, and therefore his
procedural violations in state court cannot be excused for good
cause.

Even if petitioner could show cause for his procedural
default in state court, he is unable to show "prejudice." See
Wainwright, 433 U.S. at 84-85. In order to make a showing of
prejudice, a petitioner bears the burden of proving "not merely
that the errors at his trial created a possibility of prejudice,
but that they worked to his actual and substantial disadvantage
. . . ." Frady, 456 U.S. at 170 (emphasis in original).
Petitioner has completely failed to meet this burden. With
respect to his first claim, for example, petitioner makes the
assertion that he was never informed that he had the right to
testify in his own defense. However, during petitioner's trial,
his right to testify was discussed on multiple occasions in open
court and in petitioner's presence. (Tr. 299, 384.) Notably,

petitioner was present at a voluntariness hearing, the point of which was to determine whether or not his prior statements could be used to impeach his credibility "should [he] choose to testify on his own defense." (Id. 299.)  Indeed, petitioner's trial counsel went so far as to state that "it had been our intention to call Mr. Tavarez to testify.  We've . . . [had] several counsel visits . . . in order to prepare him for testifying." (Id. 384.)  For petitioner to complain that he was never made aware of his constitutional right to testify in his own defense is wholly unsupportable.

Nonetheless, even if the record was not so uncompelling, petitioner would still bear the burden of showing that -- had he testified in his own defense -- he would have had a reasonable probability of persuading a jury of his innocence.  Given the overwhelming evidence against him and the fact that his testimony would be subject to impeachment, petitioner cannot make the threshold showing of prejudice necessary to have this claim heard on the merits in federal court.

Petitioner's claim that his counsel neither requested nor objected to the "No Adverse Inference" charge is another exercise in futility.  For one thing, it is clear from the record that counsel did in fact request such a charge from the trial court.  (Tr. 20.)  But in any event, a "No Adverse Inference" charge works to the advantage rather than to the

18

detriment of a non-testifying defendant, and petitioner has offered no explanation for how such a charge might have prejudiced the jury against him. The instruction was consistent with the standard instructions provided by New York Criminal Procedure Law § 300.10(2), (Tr. 513), and there is no indication that allowing the jury to draw unfavorable inferences from petitioner's refusal to testify would have secured his acquittal. Petitioner obviously cannot make any showing of prejudice for this frivolous claim.

Finally, petitioner has provided no reason why denying him habeas relief on procedural grounds would result in a "fundamental miscarriage of justice," allowing him to avoid the procedural bar under Wainwright. The Supreme Court has noted that in the majority of cases where a fundamental miscarriage of justice has occurred, a petitioner should also be able to meet the "cause and prejudice" standard, which petitioner has failed to do. See Dretke, 541 U.S. at 394. The only other applicable situation in which the Court has entertained a claim of a "fundamental miscarriage of justice" as a means of excusing a procedural default has been when constitutional violations in state court have "probably resulted" in the conviction of a petitioner who is "actually innocent." Id. at 393. In the instant case, petitioner has provided no compelling evidence that would lead us to believe that he is actually innocent of

19

the crimes for which he was convicted.  Therefore he has failed
to show a miscarriage of justice that would allow us to consider
his habeas petition on the merits.

Thus, under the "cause and prejudice" and "fundamental
miscarriage of justice" standards established in Wainwright,
petitioner's claims of ineffective assistance of counsel are
procedurally barred, and need not be considered on the merits in
federal court.  We note, however, that even if such claims were
not barred, the record clearly demonstrates that petitioner's
claims are meritless in light of the federal constitutional
standard for a showing of ineffective assistance of counsel.
See Strickland v. Washington, 466 U.S. 668, 687-89, 695 (1984).[4]

### C.  Petitioner's Claim That His Sentence Was Unduly Harsh and Excessive

Finally, petitioner claims that the eight-year sentence
imposed upon him by the trial court was excessive.  However,

---

[1] Petitioner has not shown that his counsel took any unreasonable
actions at trial.  Having already noted that petitioner's specific
ineffective assistance of counsel claims are contradicted by the
record, we need not discuss those claims further.  We do note,
however, that the overall performance of petitioner's trial counsel
was actually quite effective.  Counsel had two charges of Assault in
the First Degree reduced through motions - one of which was ultimately
dismissed - and petitioner was ultimately acquitted of an attempted
murder charge against him.  (Resp't Br. 3, 9-10.)  The record also
discloses vigorous cross-examination by petitioner's counsel of the
prosecution's witnesses, both in front of the jury and during the
voluntariness hearing.  (Tr. 101-03, 185-86, 223-25, 350-54).  There
is simply no indication that petitioner was convicted as a result of
careless advocacy, rather than as a result of the evidence against
him.  As such, even if this claim was not procedurally barred, there
would be no grounds to grant habeas relief for a violation of
petitioner's Sixth Amendment rights.

because it is unexhausted, this claim cannot be pursued in a federal habeas court. Although petitioner did raise sentencing issues in his direct appeal, those claims were based on the positive characteristics of the defendant and the discretionary authority of the Appellate Division to reduce his sentence. Brief for Defendant-Appellant at 40-42, People v. Tavarez, 790 N.Y.S.2d 387 (No. 633-2003). Petitioner's appeal never claimed that the sentence imposed by the trial court constituted a cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Thus, any claims that his sentence was unconstitutional were never "fairly presented" to New York state courts, and are therefore unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 843-45 (1999); 28 U.S.C. § 2254(b).

Nonetheless, as we have noted, federal courts retain the authority to dismiss unexhausted claims included in a petition for habeas corpus on the merits, where those claims are "patently frivolous." We choose to exercise that authority on this claim. The Supreme Court has held that prison sentences that fall within the range provided by statute cannot be challenged as violations of the Eighth Amendment. See Hutto v. Davis, 454 U.S. 370, 372-74 (1982); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Here, petitioner was sentenced to seven years' imprisonment for the second-degree assault count (a

class D violent felony), eight years for the second-degree possession of a weapon count (a class C violent felony), and seven years for the third-degree possession of a weapon count (a class D nonviolent felony): all of these sentences fall within the ranges prescribed by statute for those crimes.   N.Y. Penal Law § 70.00 (2007).   Therefore, petitioner's claim for relief from federal courts is patently frivolous under Hutto, and, although it is unexhausted, we dismiss it on the merits.

## CONCLUSION

For the foregoing reasons, the petition is denied because (1) petitioner's claim that the trial court improperly admitted his post-arrest statement for impeachment purposes is meritless; (2) petitioner's ineffective assistance of counsel claim is procedurally barred and also meritless; and (3) petitioner's claim that he received an excessive sentence is unexhausted and also meritless.   As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.   See 28 U.S.C. § 2253(c); Lozada v. United States, 107 F.3d 1011, 1015-16 (2d Cir. 1997) abrogated on other grounds by United States v. Perez, 129 F.3d 225, 259-60 (2d Cir.1997).   In addition, we certify that any appeal from this decision would not be taken in good faith.   See 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED.**

22

Dated:     New York, New York
           July 14, 2008

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


        Copies of the foregoing Order have been mailed on this date
to the following:

**Petitioner**
Edward Tavarez
#03-A-5401
Bare Hill Correctional Facility
Caller Box 20
181 Brand Road
Malone, NY 12953

**Attorney for Respondent**
Alyson Gill
Office of the Attorney General
State of New York
120 Broadway
New York, NY 10271